IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LATAE'VEION NAVIEOUR WOODS,<br><br>*Defendant.* | Case No. 1:22-MJ-248 |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Randall M. Mason, being duly sworn, depose and state as follows:

### INTRODUCTION

1. This affidavit is being submitted in support of a criminal complaint charging LATAE'VEION NAVIEOUR WOODS—a person at least eighteen years of age—with unlawfully, knowingly, and intentionally distributing a mixture and substance containing a detectable amount of fentanyl, a schedule II controlled substance, to a person under age twenty-one, in violation of 21 U.S.C. §§ 841(a)(1) and 859.

2. I am a Detective with the Arlington County Police Department. I have been employed as a police officer with Arlington County Police Department since 2007. I have been assigned to the Vice/Narcotics Unit since 2014. I am currently assigned to the Drug Enforcement Administration ("DEA"), where I am federally deputized as a Task Force Officer ("TFO") with the DEA's High Intensity Drug Trafficking Area Task Force. As such, I am a Law Enforcement Officer as defined under Section 2510(7) of Title 18, United States Code (*i.e.* an officer of the United States of a political sub-division thereof, who is empowered to conduct investigations of, and to make

1

arrests for, offenses enumerated in Title 21, United Stated Code). During my time in law enforcement, I have participated in the application for and execution of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity.

3. During my time in law enforcement, I have investigated violations of federal and state narcotics laws. I have conducted or participated in numerous investigations involving narcotics-related offense, which have resulted in the seizure of illegal drugs, drug proceeds in the form of United States currency, weapons, and other evidence of criminal activity. My experience includes the execution of search warrants. These investigations have led to the arrest and conviction of drug distributors and users in the General District, Juvenile and Domestic Relations, and Circuit Courts of Arlington County, as well as in the Eastern District of Virginia. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by drug traffickers and abusers of controlled substances. Through my employment, I have gained knowledge in the use of various investigative techniques including the use of wiretaps, physical surveillance, undercover agents, confidential informants, and cooperating witnesses, the controlled purchase of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interview, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants. I have testified in trials, in grand jury proceedings, and at preliminary hearings. I have been certified as an expert in the distribution of narcotics in the Arlington County General District and Circuit Courts.

4. Based on my training and experience, I know that individuals involved in criminal activities will often communicate with their associates before, during, or after the crime by using cellular telephones, and that communication can be made through verbal conversation, third party

communication applications, or the use of text messages between the two communicating parties' cellular telephones or other devices. It is also commonly understood and known that many people in our society communicate with their cellular telephones and other devices in both manners.

5. The facts and information contained in this affidavit are based on my personal knowledge of the investigation and information obtained from other state and federal law enforcement officers. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, interviews, cell phone downloads, results of search warrants, administrative subpoenas, and other physical evidence obtained during the course of this investigation.

6. This affidavit is for the limited purpose of obtaining a criminal complaint and arrest warrant. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government regarding the investigation.

## SUMMARY OF PROBABLE CAUSE

### April 26, 2022 Overdose Death of V-1

7. Since April 26, 2022, the Prince William County Police Department ("PWCPD"), and subsequently the Drug Enforcement Agency ("DEA"), have been investigating the events which led to the fatal overdose of a 14-year-old male (hereinafter referred to as "V-1") on or about April 26, 2022. V-1 was a resident of the City of Woodbridge when he overdosed at his residence located in Woodbridge, Virginia, which is within the Eastern District of Virginia.

8. At approximately 6:54 AM on April 26, 2022, Prince William County Police Officer Megan Anderson was dispatched to an address in Woodbridge, Virginia within Prince William County for the report of an unconscious individual. When Officer Anderson arrived, Medic 518 was performing CPR on V-1. V-1 was transported to Sentara Hospital where he was pronounced dead at approximately 7:56 AM.

9. At V-1's residence, Prince William County Police Officer Gonzalo Garcia maintained scene security. Consent was obtained from family members to search V-1's room and a cell phone was recovered. Family members identified the cell phone as belonging to V-1. In the hallway outside of V-1's room was a pair of black pants that Medic 518 had cut off of V-1 during the attempted resuscitation. Officer Garcia located a clear plastic baggie containing four blue pills with markings consistent with 30 milligram Percocet[1] pills inside of the pants' fifth pocket. The four blue pills were collected and submitted to the PWCPD's property and evidence section at the Western District Station.

10. On April 28, 2022, Prince William County Police Department transferred custody of the four pills found in V-1's pants to the DEA. The DEA submitted the pills to the Mid-Atlantic Laboratory for testing. A rush testing request was ordered and obtained for the pills. On April 29, 2022, the Mid-Atlantic Laboratory confirmed that all four pills contained fentanyl, a Schedule II substance, and Acetaminophen.

11. V-1's cell phone was brought to the PWCPD Digital Forensic Unit where the contents were downloaded. The download was examined for any reference to Percocet. As detailed below, there was a chat with phone number 540-XXX-0788 on April 21st that referenced V-1 purchasing Percocet from the user of that phone number. No other messages were located that suggested V-1 had more than one source of supply for Percocet.

12. T-Mobile was identified as the cell phone provider for 540-XXX-0788. On April 29, 2022, an administrative subpoena was sent to T-Mobile for subscriber information. The response from T-Mobile had a subscriber listed as "Lataeveion Woods" with an address of "659

---

[1] Based on my training and experience, Percocet is a brand name for a pain reliever tablet that contains the opioid Oxycodone and non-opioid Acetaminophen. It is currently very common in the Washington DC Metro area for counterfeit pills containing fentanyl to be manufactured to look like legitimate Percocet pills.

4

W. Main St., Smithfield, VA 23430." Through law enforcement databases, Lataeveion Navieour WOODS ("WOODS") DOB/01-**-2001 was identified as the only person with that name associated with that address.

### Communications between WOODS and V-1

13. V-1's cell phone, which utilized telephone number 571-XXX-2514, was forensically extracted and analyzed by investigators from the PWCPD. Analysis of the extraction revealed conversations between V-1 and the phone number associated with WOODS as outlined below.

*Beginning: 04/21/2022 at 4:23 PM*

| FROM | MESSAGE |
|---|---|
| WOODS | You good bro? |
| V-1 | Yea Brodie |
| V-1 | Bro I finna play u the 150 td but I wanna know if u can get me a lean yk |
| V-1 | ? |
| WOODS | A lean? |
| V-1 | Yea Brodie |
| WOODS | Wym? |
| V-1 | Purple drink? |
| WOODS | Lls ye I can get u tht |
| WOODS | Tht shi like 200 a line tho Brodie |
| V-1 | Na nvm bro lmaooo I got u w 150 |
| WOODS | U want another zip? |
| WOODS | I can front u another one buh this gas I need 190 back |
| WOODS | Up too u |
| WOODS | I can front u ercs too if u want |
| V-1 | Thank u brodieeee I'll lyk if da sum1 needs a perc |
| WOODS | U ready now? |
| V-1 | Ofc Brodie |
| V-1 | U finna pull up? |
| WOODS | Ye |
| WOODS | U want me front u like 10 of em? |
| V-1 | Ofc Brodie lmk |
| WOODS | U really think u culd get em gone? |
| V-1 | I think how much money u want bck? |

5

| WOODS | 110 |
| --- | --- |
| WOODS | Sell em for 20-25 |
| V-1 | Bet |
| WOODS | Some ppl 15 |
| V-1 | Got u |
| WOODS | 300 total |
| WOODS | Im toss you a zip n 10 |
| V-1 | Bet |
| WOODS | Finna be otw |

14. Based on my training, experience, and knowledge of this investigation, the above messages show V-1 communicating with WOODS about buying a variety of narcotics from WOODS. The conversation started with WOODS checking to see if V-1 needed any marijuana ("You good bro?") and to check on money that V-1 owed for previously supplied marijuana ("Bro I finna play u the 150"). V-1 asked WOODS if he would be able to supply V-1 with promethazine, a Schedule V substance found in cough syrup ("I wanna know if u can get me a lean," "Purple drink?"). WOODS quoted V-1 a price of $200 for promethazine. V-1 told WOODS that he was not interested at that price. WOODS offered to supply V-1 with Percocet pills ("I can front u ercs too if u want"). WOODS offered V-1 ten Percocet pills and inquired if V-1 would be able to sell them. WOODS gave V-1 advice on how much V-1 should charge for each pill ("Sell em for 20-25"..."Some ppl 15"). V-1 believed that he would be able to sell the Percocet ("Bet", "Got u"). WOODS told V-1 that WOODS would supply an ounce of marijuana ("toss you a zip") and 10 Percocet pills.

*Beginning: 04/21/2022 at 11:15 PM*

| FROM | MESSAGE |
| --- | --- |
| WOODS | Nvm im finba pullup |
| V-1 | Alr Brodie I'm here js lmk |
| WOODS | 5 away |

6

| | |
|---|---|
| V-1 | Alr Brodie |
| WOODS | Here brodie same spot |
| WOODS | Hop in the back |
| V-1 | Alr omw |

15. Based on my training, experience, and knowledge of this investigation, the above messages show WOODS meeting with V-1. WOODS stated that he was driving to meet V-1 ("Nvm im finba pullup"; "5 away"). WOODS notified V-1 when WOODS arrived ("Here brodie same spot"). The "same spot" message also suggests that V-1 and WOODS had previously completed at least one prior deal in the same location.

*Beginning: 04/21/2022 at 11:58 PM*

| FROM | MESSAGE |
|---|---|
| WOODS | Aye bri |
| WOODS | Bro |
| WOODS | U meant to give me 200? |
| V-1 | Ofc Brodie y not |
| WOODS | Run it Up and Stay Out The Way Brodie |
| V-1 | Appreciate u Brodie fr |

16. Based on my training, experience, and knowledge of this investigation, the above messages show that V-1 met up with WOODS and that the deal for one ounce of marijuana and 10 Percocet pills occurred. V-1 provided WOODS with $200 even though V-1 only owed $150. The additional $50 was likely a partial payment for the new supply of narcotics.

Search Warrant of WOODS Residence & WOODS Arrest

17. On May 4, 2022, through law enforcement databases, law enforcement located a local address for WOODS of 13711 Palm Road, Woodbridge, Virginia (hereinafter, "WOODS' residence"). Law enforcement conducted physical surveillance on WOODS's residence and

observed WOODS entering and exiting the residence on multiple occasions. Vehicles in the driveway were registered to WOODS' mother, Teresa WILLIAMS, and registered to that address.

18. On May 6, 2022, PWCPD Detective Simon Chu obtained a search warrant for WOODS' residence from Prince William County Circuit Court Judge Angela Horan.

19. On May 11, 2022, the Prince William County Narcotics Task Force executed the search warrant on WOODS' residence. WOODS was located inside of the residence and arrested on state charges immediately prior to the search warrant execution. WOODS was advised of his *Miranda* rights by Detective Chu while at his residence.

20. During the execution of the search warrant on WOODS' residence, law enforcement seized suspected marijuana, two handguns, ammunition, and a cell phone that WOODS identified as belonging to him. WOODS provided the passcode to get into the cell phone and gave 540-XXX-0788 as his phone number. Additionally, WOODS stated that no one other than him used the cell phone.

21. One of the firearms recovered during the search of WOODS' residence did not have a serial number on it, commonly referred to as a "ghost gun." Based on my training and experience, "ghost guns" are typically partially homemade or home-assembled firearms, and are often illicitly sold and possessed. The ghost gun recovered from WOODS' residence was located in the basement bedroom behind a water heater. WOODS' uncle, Percy Williams, occupies the basement bedroom in the residence. When law enforcement interviewed Mr. Williams on scene, he stated that WOODS ran into his room with a black handgun and asked his uncle to hide the gun when police arrived at the residence.

22. Following WOODS' arrest, Your Affiant and Detective Chu interviewed WOODS at the Central District Station of the PWCPD. WOODS was shown a photograph of V-1 and confirmed that he knew V-1. WOODS identified V-1 by a shortened version of his full name.

When confronted with the text messages from Paragraph 13, WOODS confirmed that he sold 10 Percocet pills and an ounce of marijuana to V-1.

23. WOODS further admitted that both of the handguns found in the residence belonged to him. He admitted that he purchased the legal firearm when he turned 21, but had bought the ghost gun when he was 19 or 20. He stated that he had the firearms for "protection."

<u>Evidence located on WOODS' Cell Phone</u>

24. WOODS' cell phone was brought to the Arlington County Police Department Digital Forensic Unit ("DFU") where it was downloaded pursuant to the search warrant. There was a large amount of information that identified WOODS as the primary user of the phone, including "selfie" photographs, videos, the email address for the Apple ID, and several social media accounts.

25. The text messages on WOODS' phone showed that he was distributing suspected fentanyl in the form of Percocet 30mg pills to a small number of people. One of the people identified through text messages as a customer of WOODS was V-1. WOODS' phone had the same conversation referenced above in Paragraphs 13-15 between WOODS and V-1.

26. There were additional text messages between V-1 and WOODS that were not on V-1's phone. These messages demonstrate WOODS' knowledge of V-1's age. On March 25, 2022, the following exchange took place:

| FROM | MESSAGE |
|---|---|
| V-1 | Can get roll ups for me I'll pay u |
| WOODS | I aint even in the area lil bro ill be around a lil later if u still need help with tht I gotchu later |
| WOODS | Ask sumbody tht look coo that's walk into the store |
| WOODS | What I used too do at your age |
| V-1 | Ight good looks bro |

9

27.     Based on my training, experience, and knowledge of this investigation, I believe these text messages show V-1 asking WOODS to buy V-1 some rolling papers ("roll ups") that are commonly used to smoke marijuana. WOODS replied by giving V-1 advice to ask someone walking into the store that looks cool to buy the rolling papers for V-1. WOODS then stated, "What I used too do at your age," showing that WOODS knew that V-1 was under 21 years of age and could not buy the rolling papers himself.[2]

28.     When a cell phone is downloaded by the DFU, someone reviewing the data is able to view the data through a timeline of events of the phone. The timeline on WOODS' phone showed that he read an article on the news website "Inside Nova" at approximately 10:38 AM on April 28, 2022. The article on Inside Nova documents the death of V-1 and another juvenile drug overdose victim. Approximately two minutes after reading the article, WOODS sent V-1 a text that asked, "U good brodie?" Approximately 18 seconds after that text, WOODS sent another text message to a contact named "Percy" that stated, "I think shit got deep unc." Based on my training, experience, and knowledge of this investigation, I believe the second message was sent to WOODS' uncle.

### V-1 Autopsy and Cause of Death

29.     A chemical analysis of V-1's femoral blood that was obtained during his autopsy was analyzed by Dr. Carol L. O'Neal, a Forensic Toxicologist with the Virginia Department of Forensic Science. The analysis of the femoral blood showed the presence of 0.048mg/L of fentanyl and an unquantified amount of despropionylfentanyl, a metabolite of fentanyl. No other drugs or alcohol were present.

30.     Dr. Meghan S. Kessler, Virginia Office of the Chief Medical Examiner, was the

---

[2] In the state of Virginia, an individual needs to be 21 years old to buy any tobacco products—to include rolling papers.

forensic pathologist who performed the autopsy on V-1. Dr. Kessler ruled that V-1 died of Accidental Fentanyl Intoxication.

## CONCLUSION

31. Based upon the foregoing, I submit that there is probable cause to believe that on or about April 21, 2022, in the County of Prince William, within the Eastern District of Virginia, the defendant, LATAE'VEION NAVIEOUR WOODS—a person at least eighteen years of age—did unlawfully, knowingly, and intentionally distribute a mixture and substance containing a detectable amount of fentanyl, a schedule II controlled substance, to a person under age twenty-one, in violation of 21 U.S.C. §§ 841(a)(1) and 859.

32. Wherefore, I respectfully request that this Court issue a criminal complaint charging LATAE'VEION NAVIEOUR WOODS with a violation of 21 U.S.C. §§ 841(a)(1) and 859.

Respectfully submitted,

Randall M. Mason
Task Force Officer
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim P. 4.1 via telephone this 8th day of September, 2022.

John F. Anderson
Digitally signed by John F. Anderson
Date: 2022.09.08 11:42:35 -04'00'

Hon. John F. Anderson
United States Magistrate Judge