FILED IN OPEN COURT

JAN - 5 2023

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LATAE'VEION NAVIEOUR WOODS,<br><br>Defendant. | No. 1:22-cr-226 |

## STATEMENT OF FACTS

The United States and the defendant, Latae'veion Navieour Woods, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. On or about April 21, 2022, in Prince William County, in the Eastern District of Virginia, the defendant did unlawfully, knowingly, and intentionally distribute a Schedule II controlled substance to a person under age twenty-one, in violation of Title 21, United States Code, Sections 841(a)(1) and 859.

2. On the morning of April 26, 2022, Victim 1—a 14-year old boy—was found nonresponsive in his home in Woodbridge, and was later pronounced dead at Sentara hospital. Officers with the Prince William County Police Department ("PWCPD") found a clear plastic baggie containing four blue pills with markings consistent with 30 milligram Percocet[1] pills in Victim 1's pants. The pills were subsequently analyzed at the Drug Enforcement Administration's Mid-Atlantic Laboratory. The analysis showed that the pills contained N-

---

[1] Percocet is a brand name for a pain reliever tablet that contains the opioid Oxycodone—a Schedule II controlled substance—and non-opioid Acetaminophen. It is currently very common in the Eastern District of Virginia, and throughout the United States, for counterfeit pressed pills containing fentanyl to be manufactured to look like legitimate Percocet pills.

phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance, as well as acetaminophen. Chemical analysis of Victim 1's femoral blood obtained during his autopsy revealed the presence of 0.048mg/L of fentanyl and an unquantified amount of despropionylfentanyl, a metabolite of fentanyl. No other drugs or alcohol were present. The Virginia Office of the Chief Medical Examiner ruled that Victim 1 died of Accidental Fentanyl Intoxication.

3. Victim 1 purchased pills purporting to be Percocet from the defendant in the two weeks leading up to his death. Victim 1 and the defendant had numerous conversations by text message about Victim 1 using, buying, and/or re-selling the "percs"[2] he would obtain from the defendant during March and April 2022. For example, the following conversation between the defendant and Victim 1—during which a deal is arranged for "percs" and the defendant provides Victim 1 with advice as to how to market and sell "percs"—occurred on April 21, 2022 around 4:00PM.

| FROM | MESSAGE |
|---|---|
| DEFENDANT | I can front u ercs too if u want |
| VICTIM 1 | Thank u brodieeee I'll lyk if da sum1 needs a perc |
| DEFENDANT | U ready now? |
| VICTIM 1 | Ofc Brodie |
| VICTIM 1 | U finna pull up? |
| DEFENDANT | Ye |
| DEFENDANT | U want me front u like 10 of em? |
| VICTIM 1 | Ofc Brodie lmk |
| DEFENDANT | U really think u culd get em gone? |
| VICTIM 1 | I think how much money u want bck? |
| DEFENDANT | 110 |
| DEFENDANT | Sell em for 20-25 |

---

[2] Real Percocet, as well as counterfeit pressed pills containing fentanyl, have various street names, to include "percs," "blues," and "M30s." Throughout this document, the term "perc" or "percs" will be used for consistency and because that was the term most often used in conversations between VICTIM 1 and the defendant.

| VICTIM 1 | Bet |
| --- | --- |
| DEFENDANT | Some ppl 15 |
| VICTIM 1 | Got u |

4.      During the above conversation with the defendant, Victim 1 messaged another contact that he was going to start selling "percs," and asked if that contact wanted to buy one. Victim 1 messaged another contact and stated that he was going to "pop a perc" tomorrow. Later on April 21, 2022, messages between Victim 1 and the defendant evidence that the deal for "percs" did take place. On April 25th, Victim 1's phone shows that he searched "How do u eat an M30."

5.      A review of Victim 1's phone revealed several additional conversations between the defendant and Victim 1 about Victim 1 using, buying, and/or selling "percs" during March and April 2022. On March 24th, Victim 1 purchased one pill from the defendant for $20. On April 14th, the defendant asked Victim 1 if he knew anyone that needed Percocet. On April 15th, Victim 1 bought two pills from the defendant. Later on April 15th, Victim 1 sent a message to another contact saying: "I'm dying bruuuuu....I took the perc." On April 17th, Victim 1 messaged the defendant about using one of the "percs," and the defendant told Victim 1 to keep looking for other people that wanted pills. No other messages were located on Victim 1's phone that suggested Victim 1 had more than one source of supply for "percs." During numerous conversations with the defendant, Victim 1 made reference to being in school and, on at least one occasion, stated that he gets out of school at 3:30PM.

6.      On May 11, 2022, the Prince William County Narcotics Task Force executed a search warrant on the defendant's residence. During the execution of the search warrant, law enforcement seized suspected marijuana, two handguns—a Glock 48 handgun bearing serial

3

number BVNE171 and a Polymer 80, semi-automatic "ghost gun"[3] bearing no serial number—ammunition, and a cell phone, all belonging to the defendant. When the police arrived, the defendant ran into his room and asked his uncle to hide the gun.

7. In addition to the aforementioned messages with Victim 1, the defendant's phone had more messages showing that he was distributing "percs," "blues," and "30s" to other individuals during March and April of 2022. The defendant's cell phone also revealed that he read an article on the news website "Inside Nova" at 10:38 AM on April 28, 2022 documenting the death of Victim 1. Approximately two minutes after reading the article, the defendant sent Victim 1 a text that asked, "U good brodie?" Approximately 18 seconds after that text, the defendant sent another text message to his uncle that stated, "I think shit got deep unc." The defendant later admitted to police that he sold pills to Victim 1 and that he was aware that the pills he was selling could kill people.

8. The defendant also offered to sell Victim 1 a gun. On March 28, 2022, the defendant offered Victim 1 a Glock 19 for $650 or a Glock 48 for $800. The defendant told Victim 1 that the Glock 19 was a "ghost," and that the Glock 48 was "stupid clean."

9. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

10. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

---

[3] "Ghost guns" are typically partially homemade or home-assembled firearms bearing no serial number.

4

11. If the defendant breaches the plea agreement, then pursuant to the plea agreement, he waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Lauren E. Hahn
Special Assistant United States Attorney (LT)

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Latae'veion Navieour Woods, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: 1/3/22

_____
Latae'veion Navieour Woods
Defendant

**Defense counsel signature:** I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 1/5/22

_____
Faraji Rosenthall, Esq.
Counsel for the Defendant